William BOSCH et al., Respondents,

v.

Clifford RENNER, Appellant.

William BOSCH et al., Respondents,

v.

VILLAGE OF UPLANDS PARK, Appellant.

Nos. 56249, 56252.

Supreme Court of Missouri,
Division No. 2.

May 14, 1973.

Huesch, Eppenberger, Donohue, Elson & Cornfeld, Thomas M. Carney, St. Louis, for respondents, William and Irene Bosch.

Robert E. Ahrens, St. Louis, for appellant.

MORGAN, Presiding Judge.

Plaintiffs, William Bosch and Irene M. Bosch—residents of Clayton Estates, filed two suits wherein they sought separate and distinct declaratory judgments. Although the issues involved were different in each case, the parties stipulated that they be consolidated for trial and be considered together on appeal.

In case No. 56,249, the issue was whether or not certain 65 year old deed restrictions, limiting the use of certain lots owned by plaintiffs, were valid and en-forceable. The lots were located in the Village of Uplands Park in St. Louis County. The trial court entered a decree declaring that such restrictions were invalid and unenforceable. Although an appeal was filed, defendant-appellant Renner has failed to file a brief submitting facts relevant to said case and does not claim that the trial court erred therein. We affirm.

In case No. 56,252, the issue was whether or not Ordinance No. 29 of the Village of Uplands Park, which is a one use zoning ordinance encompassing the whole village, was valid. The trial court declared the ordinance to be "invalid and unenforceable" relative to the lots owned by plaintiffs. We reverse.

Uplands Park is one of the many incorporated areas located in St. Louis County. It is in the eastern portion thereof and near the city limits of St. Louis. The village was incorporated in 1914 and consists of five square city blocks extending generally in an easterly and westerly direction along the south side of Natural Bridge Road. Pine Lawn is to the north, east and south and Beverly Hills is to the west. On May 10, 1945, the village adopted Ordinance No. 29 which created a single residential district. In addition to limiting construction and use to one-family dwellings, exceptions authorized were: churches, schools, libraries, museums, parks, playgrounds or community buildings owned or operated by the village, truck gardening and accessory buildings. Apart from the single residences, one commercial enterprise was in existence prior to adoption of the ordinance—a filling station which still operates. Since several doctors maintained offices in their homes, allowance was made for them to continue with small signs permitted to designate the locations. Otherwise, the village contains one hundred eighty-eight (188) single family residences built, apparently, both before and after adoption of the ordinance.

On January 3, 1964, plaintiffs first purchased a lot in Uplands Park. Another lot

was purchased by them on March 31, 1967. They fronted on different side streets—Oakdale and Ridgedale, which extended to the south—but were back-to-back and one side of each bordered Natural Bridge Road. The net result was that plaintiffs owned all of that portion of the "middle" block abutting the south side of said road. Located on each lot was a single-family dwelling. Directly across Natural Bridge Road, on the north side in Pine Lawn, was a large frame house containing five apartments, a "Steak 'n Shake" and a "double flat." There seems to be no dispute but that the character of the land use in Pine Lawn (along Natural Bridge Road) was "quite mixed" with single family dwellings, multiple family apartments and various commercial establishments.

Plaintiff, Mr. Bosch, testified that he was aware of Ordinance No. 29 at the times he purchased the two lots, but that he did so with the intent of having the same rezoned for commercial usage. Such efforts failed as did a petition drive initiated by him among the residents of Uplands Park. He described such efforts by testifying: "That was part of my business. That is one of the phases of my business." As he said at the trial: "I had expected the village to be reasonable about it." To sustain his contention that it was not reasonable to have his lots zoned for single family use, he detailed the extent of his investment and the return thereon. He had paid $24,500 for one lot with a brick residence on it, but offered an opinion it was now worth $15,000. The estimated potential loss was based on the fact he could rent the same for only $150 per month when he should have $300 per month to profit from the investment. He detailed the difficulty in finding suitable tenants and attributed this difficulty to traffic on Natural Bridge Road. The second residence was used by a doctor for his home and office, and in respect to it, he said: "It's a reasonable investment * * * I'm not losing money." When asked what would be the best use of the land, he replied: "Al-most anything commercial that would pay enough rent." It was also brought out that, sometime before, he had promoted development of a large supermarket outside of Uplands Park but nearby.

Dr. Stadler's property was across Oakdale directly east of plaintiffs' eastern lot. He complained of the heavy traffic on Natural Bridge Road, and said: "They wake us every morning at six o'clock . . . with heavy traffic." He further said the noise and smell of traffic was undesirable. It was brought out that he had been negotiating to sell his property to others—including plaintiffs.

Mrs. Knapp, who owned the five unit apartment property to the north in Pine Lawn, had been a long time resident of the area. She described how the area had grown and traced the change in Natural Bridge Road from a horse and buggy country road to its present status as a major street. From the record presented, it is fair to say that most of her testimony related to periods of time hardly relevant to the questioned issue. She did state an opinion that traffic was "just about as heavy" as it was prior to construction of Interstate 70, which runs somewhat parallel to Natural Bridge Road.

A trustee of Uplands Park, who also acted as village clerk, testified to the contrary. He said: "It isn't nearly as heavy as it used to be before they put in Highway 70." He compared the traffic flow to that on Florissant. Testimony was given that there was a four-way stop sign on Natural Bridge in Uplands Park that "slows traffic" for a school crossing. In view of several vacancies in business properties to the west in Pine Lawn, he described that area as a "commercial slum." It was also established that he had taken part in thwarting plaintiffs' efforts to obtain rezoning.

A Mr. Kahn, who at time of trial was Professor for Urban and Regional Development at Southern Illinois University, was offered as an expert witness. His

prior experience included employment with several governmental units in their planning department—including Kansas City and St. Louis County. He said his investigation of the problem consisted of walking and driving in Uplands Park and the surrounding area for approximately two hours during the day before the trial. He first expressed an opinion, "That it is not reasonable to restrict it to a single family use," but went on to say that, " . . . it's not unreasonable to have a single family structure there." Although at first blush such opinions appear to be conflicting, he went on to explain clearly the validity of each. He did not say the property should be used commercially, but thought the area "does not create or lend itself to a situation where single family use is the only appropriate kind of activity * * * I think there are other uses that would be equally appropriate to that location." He did agree that a use other than the one most "appropriate" was not necessarily "unreasonable," but yet thought that residential use of the lots was not highly desirable.

Defendant village did not call any witnesses but relied on its cross-examination of those offered by plaintiffs, and the apparent conviction that plaintiffs had failed to sustain the burden of proof cast upon them by the existing law.

On appeal, defendant village relies solely on the recent case of McDermott v. Village of Calverton Park, Mo., 454 S.W.2d 577 (banc 1970). Therein, the court re-examined the rationale of City of Moline Acres v. Heidbreder, Mo., 367 S.W.2d 568 (1963), wherein "a zoning ordinance that placed all of the village in one district zoned for single-family dwellings was held to be invalid," and then declared: "We have carefully re-examined Moline Acres and have concluded that it is not sound and should therefore no longer be followed. We have read and reread the applicable statutes and find nothing therein to indicate a legislative intent that, *under all circumstances,* a municipality must provide for more than one use in its zoning ordinance. We recognize that a comprehensive plan of zoning would, in most cities, particularly isolated ones, require commercial zoning districts in order for the needs of the residents to be conveniently supplied. However, St. Louis County, which completely surrounds (except for the portion fronting on the Mississippi River) the large City of St. Louis, is in a rather unique situation. Many people who work in St. Louis City live in the County. That fact, coupled with its own growth, has caused a vast number of cities and villages to be formed in the County, many of which are primarily for residential purposes rather than commercial or manufacturing. Those are often referred to as 'bedroom' municipalities. Many of those cities are completely surrounded ,by other cities and most of the others border on one or more cities."

In response, plaintiffs submit that: "Only the application of the *per se* rule in *Moline Acres* was overruled by *Calverton Park*," and that the latter case did not give carte blanche approval to municipalities promulgating single district zoning ordinances *under all circumstances*. There can be no question but that plaintiffs correctly interpret the existing law on the subject.

■ However, we are left with the question as to whether or not the situation existing in Uplands Park presents "circumstances" authorizing one-use zoning under the McDermott case. We are convinced that it does, and that the trial court erred in ruling otherwise. In reaching that conclusion we have followed not only the guidelines set out in Moline and McDermott, supra, but also those in Flora Realty & Investment Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771 (banc 1952); Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833 (1963), and the many cases cited therein.

■ While seeking a declaratory judgment that the challenged ordinance was unreasonable, and thus invalid, the plain-

tiffs had the burden of proof. If they failed in that task, the village is not to be prejudiced by resting on the record as made.

What did plaintiffs establish? Certainly, that Uplands Park was incorporated many years ago in a rather rural area; that Natural Bridge Road existed as a two-lane road for horse drawn vehicles; that for many years it has been one of the major streets in the area and for years has handled four lanes of traffic; that construction of Interstate 70 has either lessened the traffic or at least reduced the extent to which traffic will increase thereon; that the residents therein, by adoption of Ordinance 29, expressed their desire to have single-family zoning; that for twenty-two (22) years the inhabitants thereof had complied therewith by both construction and use; that such needs as they might have were readily available from commercial establishments located in Pine Lawn and neighboring areas; that some businesses nearby had not been successful and in those locations the improvements were deteriorating; that a portion of plaintiffs' investment business called for buying properties at residential prices, seeking a zoning change and selling at commercial prices; that failure to accomplish such an objective in this instance would probably result in the investment in Uplands Park being unprofitable; and, that it was "not unreasonable to have a single family structure there" but that a better use would be commercial.

There was no effort whatever to show that additional commercial activity was needed or that it would benefit the people living in Uplands Park in any manner. From the record presented, plaintiffs would be the only ones possibly to benefit by a changed usage. That fact, although an element to be considered, is not controlling. McDermott, supra, 454 S.W.2d at 584. Of greater concern is "whether the public interest and welfare is sufficient to outweigh the [alleged] financial detriment to plaintiffs." From a regional standpoint, the area could only be classified as basically residential. Plaintiffs also rely on Huttig, supra, but the facts there are not comparable to those here and we need not detail those found therein. However, since the village relies on the McDermott case and plaintiffs seek to distinguish it, we will note some of the changed "circumstances" in that case. There, the McCluer Senior High School with 3,400 students was constructed across the street from McDermott's property, a large school bus garage was constructed and there were 180 bus trips a day from the school. We need not repeat the reasons given in that case for rejecting the attack on the ordinance, although they are applicable here, but obviously the changed circumstances there were monumental in comparison to those reflected in the present record.

Exercise of the police power through zoning does not have an identical effect on each and every property located in the same zone. Some will benefit more or be adversely affected more than others. Generally, the reasonableness of any zoning restriction becomes more tenuous at that point where it touches a less restrictive zone. Even absent any consideration being given to the so-called "domino theory," there must be a beginning and an end to every zoned area.

From the record in this case, we must conclude that Ordinance No. 29 was not shown to be unreasonable in so far as it applied to plaintiffs' properties. If it were classified as a debatable subject, a court should not substitute its judgment for that of the legislative body of the village. The trial court erred in doing so.

The judgment in case No. 56,249 is affirmed.

The judgment in case No. 56,252 is reversed.

FINCH, C. J., and HENLEY and DONNELLY, JJ., concur.